# EXHIBIT 1

1  WESLEY E. OVERSON (CA SBN 154737)
   WOverson@mofo.com
2  JENNIFER LEE TAYLOR (CA SBN 161368)
   JTaylor@mofo.com
3  NATHAN B. SABRI (CA SBN 252216)
   NSabri@mofo.com
4  JULIA D. KRIPKE (CA SBN 267436)
   JKripke@mofo.com
5  MORRISON & FOERSTER LLP
   425 Market Street
6  San Francisco, California  94105-2482
   Telephone: 415.268.7000
7  Facsimile: 415.268.7522

8  Attorneys for Defendants
   RESTORATION HARDWARE, INC. and GARY FRIEDMAN
9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                     SAN FRANCISCO DIVISION

13

14  EMECO INDUSTRIES, INC.,                 Case No. 3:12-cv-5072 MMC

15              Plaintiff,                  **DEFENDANTS RESTORATION
                                            HARDWARE AND GARY
16         v.                               FRIEDMAN'S SUR-REPLY TO
                                            PLAINTIFF'S MOTION FOR
17  RESTORATION HARDWARE, INC., GARY        PRELIMINARY INJUNCTION**
    FRIEDMAN, and Does 1-10,
18                                          Date:   Dec. 14, 2012
              Defendants.                   Time:   9:00 a.m.
19                                          Ctrm:   7

20                                          Hon. Maxine M. Chesney

21

22

23

24

25

26

27

28

**INTRODUCTION**

In its reply brief, Emeco mischaracterizes both the survey of Mr. Hal Poret that Restoration Hardware submitted in opposition to the preliminary injunction motion and the legal framework in which it fits.  Mr. Poret surveyed for likelihood of confusion arising from the Restoration Hardware chair as it appeared in the Restoration Hardware catalog, and he found virtually none.  Restoration Hardware submitted the survey to show that Emeco had failed to meet its burden on "likelihood of confusion," an essential element of its claims that is separate and apart from the validity of the registrations.

Contrary to Emeco's reply brief, Restoration Hardware did not submit the Poret survey to challenge Emeco's registrations' validity for lack of secondary meaning.  Restoration Hardware challenged the chair design registration because it is generic—as admitted by Emeco's own employees (Opp'n at 2, 11) and shown by widespread industry use including third-party sales of identical chairs to the Navy.[1]  A challenge on the basis of genericness does not require a survey, and one is not required at the preliminary injunction stage to defeat Emeco's motion.[2]

---

[1] Emeco inexplicably claims that third-party suppliers of the exact same chair to the Navy are irrelevant.  (Reply at 3 n.1.)  Not only is there no "Naval exception" that would avoid a genericness conclusion where identical chairs are sold to the Navy, the claim is particularly puzzling because Emeco is simultaneously claiming it has trade dress rights due to its own sales to the U.S. Navy.  Emeco's citation of *Anti-Monopoly, Inc. v. Gen. Mills Fun Grp., Inc.*, 684 F.2d 1316 (9th Cir. 1982), and *Magic Wand, Inc. v. RDB, Inc.*, 940 F.2d 638 (Fed. Cir. 1991), is inapposite, as they address use of a *word* generically by "a small part" of the public or "scattered consumers," which courts held were insufficient on their own to show genericness of a word mark.  Restoration Hardware showed that identical and nearly identical chairs are on sale across the Internet, visible in restaurants and malls, and even sold to the Navy—literal Navy chairs—by entities other than Emeco.  Such widespread use in the industry is the very definition of generic trade dress.  *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 465 F. Supp. 2d 956, 962 (N.D. Cal. 2006) (trade dress generic "if the product design is so common in the industry that it cannot be said to identify a particular source.")

[2] Emeco argues that "serious" litigants introduce surveys on genericness (Reply at 4-5), but cites no case that so requires.  In fact, survey evidence is *not* required to show genericness, and courts regularly resolve the issue without looking to surveys.  *Van Well Nursery, Inc. v. Mony Life Ins. Co.*, 421 F. Supp. 2d 1321, 1331 (E.D. Wash. 2006) (survey evidence "not required to resolve issues of genericness."); *see also Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1049 (9th Cir. 1998) (where particular design was "used widely in the industry," it was generic); *Walker*, 465 F. Supp. 2d at 962-64 (finding plaintiff's product design trade dress generic based on general nature of claimed trade dress and common use in industry).

Emeco also criticizes the Poret survey as inadequate, attaching Mr. Poret's testimony from another case to its reply brief and suggesting that the survey does not meet Mr. Poret's own requirements for testing likelihood of confusion. As Mr. Poret explains in his supplemental declaration, the survey that Emeco cites tested likelihood of confusion at the point of sale in a case where the drink products were displayed side-by-side in a store. The design of that survey has no bearing here, where the products were offered for sale in the Restoration Hardware catalog and on the Restoration Hardware website, and never made it into any stores.

## ARGUMENT

### I.   EMECO MISCHARACTERIZES THE PORET SURVEY.

Contrary to Emeco's assertions, Mr. Poret did not conduct a secondary meaning survey, nor did Restoration Hardware rely on the Poret survey as such—the survey is even titled "Survey to Determine Whether There is a Likelihood That Consumers Who View the Restoration Hardware Naval Chair Will Confuse It or Associate It with Emeco's Navy Chair." (Poret Decl. Ex. 1.) Nowhere in the report does Mr. Poret characterize his survey as one to test secondary meaning. Restoration Hardware's reference to Mr. Poret's extremely low survey results in the secondary meaning portion of its brief was merely to surmise that the reason that Emeco did not submit a secondary meaning survey is that it knew that such a survey would not support a finding of secondary meaning. That reference cannot convert Mr. Poret's survey on likelihood of confusion into a secondary meaning survey. Emeco's argument that the Poret survey "at best go[es] *solely* to secondary meaning" (Reply at 1 (emphasis added)) is specious.

### II.   THE PORET SURVEY APPLIED A SOUND METHODOLOGY TO TEST FOR LIKELIHOOD OF CONFUSION.

The Poret survey tested whether consumers are likely to confuse or associate Restoration Hardware's aluminum naval chair with Emeco's Navy Chair. The survey was methodologically sound; it showed images of Restoration Hardware's chair to Restoration Hardware's consumers in settings that replicated both post-sale and point-of-sale marketplace conditions. *Hansen Beverage Co. v. Cytosport, Inc.*, Case No. CV 09-0031-VBF(AGRx), 2009 U.S. Dist. LEXIS

120508, at *39 (C.D. Cal. Nov. 4, 2009) ("the proper universe to survey is composed of potential buyers of the junior user's goods or services"); Poret Decl. Ex. 1 at 3-9, 12.)

When shown the chair alone, respondents were asked if they associated the overall appearance of the chair with any particular company or brand of chair. (Poret Decl. Ex. 1 at 3-5.) If they responded affirmatively, they were then asked which company or brand as well as why they gave that answer. (*Id.* at 5.) This question allowed respondents an opportunity to respond that they associated Restoration Hardware's chair with Emeco "when seen outside the context of a Restoration Hardware catalog or website." (*Id.* at 5.) In other words, they were given an opportunity to connect Restoration Hardware's chair to Emeco even if they did not actually believe the chair shown was Emeco's chair. (*Id.*). Nonetheless, the results remained inescapably low—Mr. Poret concluded that there was only a "negligible likelihood" that the appearance of the Restoration Hardware chair will cause any association with Emeco's Navy Chair. (*Id.* at 21.)

Respondents were then shown two images from the Restoration Hardware catalog and were asked if they had an opinion about what company or brand makes the chair. (*Id.* at 8.) If they answered affirmatively, they were then asked which company or brand and the basis for their response. (*Id.* at 9.) Those who had initially responded that they had an opinion about the company or brand that makes the chair, but then did not name a specific company or brand, were then asked what made them answer that they had an opinion in the first instance. (*Id.*) All respondents were then asked if they believed the chair was affiliated with or authorized by any company or brand. (*Id.*) Those who responded affirmatively were asked to identify that company or brand and their reason for doing so, and those who did not identify a particular company or brand were asked what made them answer that they believed the chair was affiliated with or authorized by any company or brand. (*Id.*)

Mr. Poret has done hundreds of likelihood of confusion surveys and this is a standard series of questions designed to test whether there is likelihood of confusion as to source, sponsorship, or affiliation based upon the look of the defendant's products. (Poret Decl. Ex. 1 at 2; Poret Sur-Reply Decl. ¶¶ 7-9.) Emeco inexplicably disregards these questions and claims that the Poret survey "solely" tested secondary meaning. By misconstruing and even ignoring the

Poret survey's findings and conclusions, Emeco seeks to obscure the reality: there is *no* likelihood of confusion between Restoration Hardware's chair and Emeco's Navy Chair. Thus, Emeco is not likely to prevail on the merits.[3]

Moreover, Emeco's criticism that the Poret survey fails to show Emeco and Restoration Hardware's chair side-by-side is misplaced. A key tenet underlying likelihood of confusion surveys is their need to replicate realistically the marketplace conditions in which the products are generally encountered. *Walt Disney Prods. v. Air Pirates*, 581 F.2d 751, 759 (9th Cir. 1978) (reversing summary judgment on trademark infringement claim for plaintiff as comparison of marks "should not be a simple, visual, side-by-side comparison but rather the mark and the imitation should be viewed in light of what occurs in the marketplace," and context of respective marks "markedly diminished" likelihood of confusion) (quotation omitted). (Poret Sur-Reply Decl. ¶ 10.) In some situations, such as with handbags or energy drinks, which are often sold in the same store area or aisle, consumers encounter the plaintiff's and defendant's products in close proximity, (*e.g.*, *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 574 (S.D.N.Y. 2007) (sequential line-up survey would "better approximate[] marketplace conditions."); ECF No. 37-3 Ex. 11 at 7 (prior report of Hal Poret explaining sequential lineup appropriate where products "commonly found on the shelf together in stores")), and it would make sense to show images of both parties' products to test point-of-sale confusion. In *Cytosport*, Mr. Poret properly noted that it was appropriate to show respondents both parties' products where the products could be found side-by-side on store shelves and the issue was point of sale confusion. (ECF No. 37-3 Ex. 11 at 8.)

---

[3] Emeco tries to shoehorn the facts here into a counterfeiting case so that it can argue in the alternative that it is not even required to demonstrate a likelihood of confusion. This is not a counterfeiting case. Counterfeiting is "the act of producing or selling a product with a sham trademark . . . the most blatant and egregious form of 'passing off.'" J. McCarthy on Trademarks & Unfair Competition § 25:10; *see, e.g.*, *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, Case No. C 12-2582 CW, 2012 U.S. Dist. LEXIS 85665, at *38-39 (N.D. Cal. June 20, 2012) (counterfeit products used design, hardware, and software identical to genuine product, as well as plaintiff's registered word mark, name, and corporate address). Restoration Hardware never represented that the chairs it was offering were Emeco chairs. (Opp'n at 15.) At best, Emeco's reply brief establishes that there are numerous sources for cheap chairs that look like the Emeco chair—not that the world is full of counterfeiters.

1      Emeco grossly misconstrues Mr. Poret's statements in *Cytosport* as a blanket indictment

2  of surveys that do not show both parties' products in close proximity.  It was not, and his

3  comments have no relevance where the same sales conditions are not present.  Here, the Poret

4  survey realistically replicated marketplace conditions by showing images of the chair from

5  Restoration Hardware's actual catalog.  Indeed, that is the only way that consumers currently *can*

6  encounter the chair, as it is no longer shown on Restoration Hardware's website and it has never

7  been available for sale in Restoration Hardware's stores.  (Opp'n at 4-5.)  When the products are

8  never sold side-by-side, or even in the same stores, it would be inappropriate to conduct the type

9  of survey that Mr. Poret advocated for energy drinks in the *Cytosport* case—in fact, had Mr. Poret

10  made such a comparison, it would have *weakened* the evidentiary value, not strengthened it.  *See*

11  J. McCarthy on Trademarks & Unfair Competition § 32:163 ("[T]he closer the survey methods

12  mirror the situation in which the ordinary person would encounter the trademark, the greater the

13  evidentiary weight of the survey results.").

14

15      Dated: December 6, 2012      MORRISON & FOERSTER LLP

16

17      By:  */s/ Wesley E. Overson*
    WESLEY E. OVERSON

18      Attorneys for Defendants
    RESTORATION HARDWARE, INC.

19      and GARY FRIEDMAN

20

21

22

23

24

25

26

27

28