1   JOHN W. SPIEGEL (SBN: 78935)
    John.Spiegel@mto.com
2   MUNGER, TOLLES & OLSON LLP
    355 South Grand Avenue, Thirty-Fifth Floor
3   Los Angeles, CA  90071-1560
    Telephone:  (213) 683-9100
4   Facsimile:   (213) 687-3702

5   JONATHAN H. BLAVIN (SBN: 230269)
    Jonathan.Blavin@mto.com
6   JESSE MAX CREED (SBN: 272595)
    Jesse.Creed@mto.com
7   MUNGER, TOLLES & OLSON LLP
    560 Mission Street, 27th Floor
8   San Francisco, CA  94105
    Telephone:  (415) 512-4000
9   Facsimile:   (415) 512-4077

10
    Attorneys for Plaintiff
11  EMECO INDUSTRIES, INC.

12                  UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                     SAN FRANCISCO DIVISION

15  EMECO INDUSTRIES, INC.              CASE NO.  CV 12-05072 MMC

16              Plaintiff,              **PLAINTIFF'S REPLY IN SUPPORT OF
                                        MOTION FOR PRELIMINARY
17        v.                            INJUNCTION**

18  RESTORATION HARDWARE, INC., GARY    Date:        December 14, 2012
    FRIEDMAN, and DOES 1-10.            Time:        9:00 a.m.
19                                       Courtroom:   7 - 19th Floor
                Defendants.             Judge:       Honorable Maxine M. Chesney
20

21                      **PUBLIC REDACTED VERSION**

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    EMECO HAS ESTABLISHED A LIKELIHOOD OF SUCCESS ON THE
       MERITS ............................................................................................................... 2

       A.     Emeco's Trade Dress and Trademarks Are Enforceable ........................ 2

              1.     RH Has Not Proven "Genericness" ............................................. 2

                     a.   Emeco's Trade Dress Is Not Generic .................................. 2

                     b.   Emeco's Trademarks Are Not Generic ............................... 6

              2.     RH Has Not Established Functionality ....................................... 7

       B.     Emeco Has Established a Likelihood of Confusion ............................... 9

              1.     The Navy Chair® Marks Are Strong ........................................... 9

              2.     Actual Confusion Exists ............................................................ 11

              3.     Remaining Key *Sleekcraft* Factors Favor Emeco .................... 12

III.   EMECO HAS DEMONSTRATED IRREPARABLE HARM ......................... 13

IV.    THE BALANCE OF HARDSHIPS TIPS SHARPLY IN EMECO'S FAVOR .............. 15

V.     THE PUBLIC INTEREST FAVORS AN INJUNCTION ............................... 15

VI.    CONCLUSION .................................................................................................. 15

1

## TABLE OF AUTHORITIES

2

**Page**

3

**FEDERAL CASES**

4

*Abbott Labs. v. Mead Johnson & Co.,*
    971 F.2d 6 (7th Cir. 1992)........................................................................................ 15

5

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.,*
6
    280 F.3d 619 (6th Cir. 2002)..................................................................................... 2

7

*adidas Am., Inc. v. Payless Shoesource, Inc.,*
    529 F. Supp. 2d 1215 (D. Or. 2007) ..................................................................... 1, 3

8

*Anti-Monopoly, Inc. v. Gen. Mills Fun Grp., Inc.,*
9
    684 F.2d 1316 (9th Cir. 1982)................................................................................... 3

10

*Au-Tomotive Gold, Inc. v. Volkswagen of Am, Inc.,*
    457 F.3d 1062 (9th Cir. 2006).................................................................................. 12

11

*Aurora World, Inc. v. Ty Inc.,*
12
    719 F. Supp. 2d 1115 (C.D. Cal. 2009) ................................................................. 12

13

*Australian Gold, Inc. v. Hatfield,*
    436 F.3d 1228 (10th Cir. 2006)................................................................................ 12

14

*Aztar Corp. v. NY Entm't, LLC,*
15
    15 F. Supp. 2d 252 (E.D.N.Y. 1998)....................................................................... 15

16

*Banff, Ltd. v. Federated Dep't Stores, Inc.,*
    841 F.2d 486 (2d Cir. 1988).................................................................................... 12

17

*Berg v. Symons,*
18
    393 F. Supp. 2d 525 (S.D. Tex. 2005) ..................................................................... 5

19

*Blumenthal Distrib., Inc. v. Exec. Chair, Inc,*
    2010 WL 5980151 (E.D.N.Y. Nov. 9, 2010) .......................................................... 6

20

*Boston Duck Tours, LP v. Super Duck Tours, LLC,*
21
    531 F.3d 1 (1st Cir. 2008) ........................................................................................ 5

22

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.,*
    174 F.3d 1036 (9th Cir. 1999)......................................................................... 1, 9, 12

23

*Byrnes & Kiefer Co. v. Flavoripe Co.,*
24
    1986 WL 15550 (W.D. Pa. Aug. 20, 1986) ........................................................... 13

25

*Cairns v. Franklin Mint Co.,*
    292 F.3d 1139 (9th Cir. 2002).................................................................................. 13

26

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.,*
27
    2003 WL 21056809 (S.D.N.Y. May 8, 2003)....................................................... 15

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Centaur Commc'ns, Ltd. v. A/S/M Com., Inc.*,

4

    830 F.2d 1217 (2d Cir. 1987)............................................................................. 10

*Century 21 Real Estate Corp. v. Century Life of Am.*,

5

    970 F.2d 874 (Fed. Cir. 1992)............................................................................. 12

6

*Century 21 Real Estate Corp. v. Sandlin*,

7

    846 F.2d 1175 (9th Cir. 1988)........................................................................... 1, 3

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,

8

    251 F.3d 1252 (9th Cir. 2001)............................................................................. 7

9

*Coach, Inc. v. Abner's Fashion*,

    2009 WL 4810179 (C.D. Cal. Dec. 7, 2009) .................................................... 9

10

*Conf. Archives, Inc. v. Sound Images, Inc.*,

11

    2010 WL 1626072 (W.D. Pa. Mar. 31, 2010) ................................................... 5

12

*Conopco, Inc. v. May Dep. Stores Co.*,

    46 F.3d 1556 (Fed. Cir. 1994)........................................................................... 11

13

*Diamontiney v. Borg*,

14

    918 F.2d 793 (9th Cir. 1990).............................................................................. 13

15

*Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*,

    158 F.3d 1002 (9th Cir. 1998).......................................................................... 7, 8

16

*Dr. Rath Health Programs USA B.V. v. Juvenon, Inc.*,

17

    2006 WL 2038037 (N.D. Cal. July 19, 2006) ................................................... 2

18

*E & J Gallo v. Proximo Spirits, Inc.*,

    2012 WL 273076 (E.D. Cal. Jan. 30, 2012)..................................................... 10

19

*Engineered Mech. Servs., Inc. v. Applied Mech. Tech., Inc.*,

20

    584 F. Supp. 1149 (M.D. La. 1984) ................................................................... 4

21

*Entrepreneur Media, Inc. v. Smith*,

    279 F.3d 1135 (9th Cir. 2002)........................................................................... 10

22

*Fiji Water Co. v. Fiji Mineral Water USA, LLC*,

23

    741 F. Supp. 2d 1165 (C.D. Cal. 2010) ............................................................. 6

24

*Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*,

    198 F.3d 1143 (9th Cir. 1999)........................................................................... 4, 6

25

*Firehouse Rest. Grp., Inc. v. Scurmont LLC*,

26

    2011 WL 3555704 (D.S.C. Aug. 11, 2011) ...................................................... 5

27

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,

    618 F.3d 1025 (9th Cir. 2010)........................................................................... 13

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Gasser Chair Co. v. Infanti Chair Mfg. Corp.*,
943 F. Supp. 201 (E.D.N.Y. 1996) ....................................................................... 8

4

*Genesee Brewing Co., Inc. v. Stroh Brewing Co.*,
124 F.3d 137 (2d Cir. 1997)................................................................................. 5

5

6

*George & Co. v. Imagination Entm't Ltd.*,
575 F.3d 383 (4th Cir. 2009)................................................................................ 6

7

*Glover v. Ampak, Inc.*,
74 F.3d 57 (4th Cir. 1996)................................................................................... 5

8

9

*Groupion, LLC v. Groupon, Inc.*,
859 F. Supp. 2d 1067 (N.D. Cal. 2012) ............................................................ 13

10

*Haritatos v. Hasbro, Inc.*,
2007 WL 3124626 (N.D.N.Y Oct. 23, 2007) ....................................................... 5

11

12

*Heptagon Creations, Ltd. v. Core Grp. Mktg. LLC*,
2011 WL 6600267 (S.D.N.Y. Dec. 22, 2011) ...................................................... 8

13

*Herman Miller Inc. v. Alphaville Design Inc.*,
2009 WL 3429739 (N.D. Cal. Oct. 22, 2009)............................................. 11, 13

14

15

*Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*,
219 F.3d 104 (2d Cir. 2000)............................................................................. 4, 5

16

*Imagineering, Inc. v. Van Klassens, Inc.*,
53 F.3d 1260 (Fed. Cir. 1995)............................................................................. 8

17

18

*In re Trade-Mark Cases*,
100 U.S. 82 (1879)............................................................................................... 5

19

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*,
4 F.3d 819 (9th Cir. 1993).................................................................................... 2

20

21

*Int'l Kennel Club. v. Mighty Star, Inc.*,
846 F.2d 1079 (7th Cir. 1988)........................................................................... 14

22

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
456 U.S. 844 (1982)......................................................................................... 7, 8

23

24

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
408 F.3d 596 (9th Cir. 2005)............................................................................ 4, 5

25

*Leatherman Tool Group, Inc. v. Coast Cutlery Co.*,
823 F. Supp. 2d 1150 (D. Or. 2011) ................................................................. 14

26

27

*LeSportsac, Inc. v. K–Mart Corp.*,
754 F.2d 71 (2d Cir. 1985)................................................................................... 8

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3    *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,
        2008 WL 4614660 (N.D. Cal. Oct. 16, 2008) .......................................................... 4
4
    *Levi Strauss & Co. v. Shilon*,
5       121 F.3d 1309 (9th Cir. 1997) ................................................................... 2, 14

6    *Lewis Mgmt. Co. v. Corel Corp.*,
        1995 WL 724835 (S.D. Cal. June 28, 1995) ........................................................ 13
7
    *LGS Architects, Inc. v. Concordia Homes of Nev.*,
8       434 F.3d 1150 (9th Cir. 2006) ..................................................................... 15

9    *Linotype Co. v. Varityper, Inc.*,
        1989 WL 94338 (S.D.N.Y. Aug. 4, 1989) ......................................................... 15
10
    *Lorillard Tobaco Co. v. S&M Brands, Inc.*,
11      616 F. Supp. 2d 581 (E.D. Va. 2009) ............................................................... 15

12   *Lumber Liquidators, Inc. v. Stone Mountain Carpet Mills, Inc.*,
        2009 WL 2013599 (E.D. Va. July 10, 2009) ...................................................... 10
13
    *Magic Wand, Inc. v. RDB, Inc.*,
14      940 F.2d 638 (Fed. Cir. 1991) ........................................................................ 3

15   *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*,
        81 F.3d 881 (9th Cir. 1996) ........................................................................... 10
16
    *Malletier v. Burlington Coat Factory Warehouse*,
17      426 F.3d 532 (2d Cir. 2005) .......................................................................... 13

18   *Malletier v. Dooney & Bourke, Inc.*,
        525 F. Supp. 2d 558 (S.D.N.Y. 2007) ............................................................. 12
19
    *Marks Org., Inc. v. Joles*,
20      784 F. Supp. 2d 322 (S.D.N.Y. 2011) ............................................................. 14

21   *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
        518 F. Supp. 2d 1197 (C.D. Cal. 2007) ........................................................... 14
22
    *Neighborhood Assistance Corp. of Am. v. First One Lending Corp.*,
23      2012 WL 1698368 (C.D. Cal. May 15, 2012) .................................................. 10

24   *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
        638 F.3d 1137 (9th Cir. 2011) ........................................................................ 7
25
    *P3 Int'l v. Weitech Inc.*,
26      1999 WL 1020249 (S.D.N.Y. Oct. 6, 1999) ..................................................... 7

27   *Polo Fashions, Inc. v. Dick Bruhn, Inc.*,
        793 F.2d 1132 (9th Cir. 1986) ...................................................................... 14

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3    *Power Balance LLC v. Power Force LLC*,
        2010 WL 5174957 (C.D. Cal. Dec. 14, 2010) ............................................................. 9

4

     *Quality Inns Int'l, Inc. v. McDonald's Corp.*,
5        695 F. Supp. 198 (D. Md. 1988) ................................................................................ 4

6    *Rebel Debutante LLC v. Forsythe Cosmetic Grp., Ltd.*,
        799 F. Supp. 2d 558 (M.D.N.C. 2011) ...................................................................... 14

7

     *Reno Air Racing Ass'n, Inc. v. McCord*,
8        452 F.3d 1126 (9th Cir. 2006) .................................................................................... 7

9    *Schutz Cont., Inc. v. Mauser Corp.*,
        2012 WL 1073153 (N.D. Ga. Mar. 28, 2012) ............................................................. 4

10

     *Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*,
11       668 F.3d 677 (9th Cir. 2012) ...................................................................................... 8

12   *Shuffle Master Inc. v. Awada*,
        2006 WL 2547091 (D. Nev. Aug. 31, 2006) ............................................................. 11

13

     *STX, Inc. v. Bauer USA, Inc.*,
14       1997 WL 337578 (N.D. Cal. June 5, 1997) ............................................................... 3

15   *SunEarth, Inc. v. Sun Earth Solar Power Co.*,
        846 F. Supp. 2d 1063 (N.D. Cal. 2012) ..................................................................... 13

16

     *Tools USA & Equip. Co. v. Champ Frame Straightening Equip. Inc.*,
17       87 F.3d 654 (4th Cir. 1996) ........................................................................................ 7

18   *Uni. Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*,
        2005 WL 2427898 (M.D.N.C. 2005) ......................................................................... 14

19

     *United States v. Guerra*,
20       293 F.3d 1279 (11th Cir. 2002) ............................................................................. 9, 13

21   *United States v. Lam*,
        677 F.3d 190 (4th Cir. 2012) ...................................................................................... 9

22

     *Vision Sports, Inc. v. Melville Corp.*,
23       888 F.2d 609 (9th Cir. 1989) ...................................................................................... 10

24   *Volkswagen AG v. Verdier Microbus & Camper, Inc.*,
        2009 WL 928130 (N.D. Cal. Apr. 3, 2009) ................................................................. 8

25

     *Walker & Zanger, Inc. v. Paragon Ind., Inc.*,
26       465 F. Supp. 2d 956 (N.D. Cal. 2006) ........................................................................ 6

27   *WE Media Inc. v. Gen. Elec. Co.*,
        218 F. Supp. 2d 463 (S.D.N.Y. 2002) ................................................................. 11, 12

28

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*,
   419 F.3d 925 (9th Cir. 2005)................................................................... 5

*Zino Davidoff SA v. CVS Corp.*,
   571 F.3d 238 (2d Cir. 2009)................................................................. 14

*Zobmondo Entm't, LLC v. Falls Media, LLC*,
   602 F.3d 1108 (9th Cir. 2010)............................................................... 2

STATUTES AND RULES

15 U.S.C. § 1064(3) ................................................................................... 4

15 U.S.C. § 1127 ....................................................................................... 9

OTHER AUTHORITIES

2 McCarthy § 11:76 ............................................................................ 9, 10

2 McCarthy § 12:14 ................................................................................. 5

3 McCarthy § 17:12 ................................................................................. 4

1    **I.     INTRODUCTION**

2           As Restoration Hardware's (RH) Opposition confirms, it is asking this Court for a license

3    to sell cheap Chinese counterfeits of a federally-registered and protected product design made in

4    the United States.  Not surprisingly, the law does not allow this result.  RH is engaging in blatant

5    acts of infringement, and its defenses are foreclosed by controlling Ninth Circuit law.

6           Emeco's likely success on the merits is clear.  RH's "genericness" defense is as cynical as

7    it is meritless, and does nothing to undermine the validity of Emeco's marks.  At base, RH argues

8    that because others are selling infringing products, it deserves a free pass.  But evidence of "other

9    potential infringers" is "irrelevant under the law of this circuit."  *Century 21 Real Estate Corp. v.*

10   *Sandlin*, 846 F.2d 1175, 1181 (9th Cir. 1988).  RH's "'argument is no more persuasive than that

11   of a drunken driver who pleads to be let off because there are 'lots of other drunk drivers on the

12   road—why pick on me?' This is not a 'defense,' nor should it be.'"  *adidas Am., Inc. v. Payless*

13   *Shoesource, Inc.*, 529 F. Supp. 2d 1215, 1258, 1260 (D. Or. 2007) (quoting McCarthy § 17:17).

14          As to the likelihood of confusion, the Ninth Circuit has made clear that where, as is the

15   case here, there is a "virtual identity of marks" with "identical products," the "likelihood of

16   confusion would follow as a matter of course."  *Brookfield Commc'ns, Inc. v. W. Coast Entm't*

17   *Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999).  RH ignores such law, and instead relies on an

18   irrelevant, and deeply flawed, survey as to whether consumers specifically identify Emeco as the

19   source of the Navy Chair® design.  Not only does this survey at best go solely to secondary

20   meaning—which RH is foreclosed from challenging given Emeco's incontestable marks—but it

21   fails to meet the very standards its designer has criticized other surveys as lacking.

22          Moreover, RH's intent to infringe is obvious.  Beyond being the subject of repeated

23   infringement actions and touting to potential investors its established practice of misappropriating

24   others' designs (none of which RH denies),

25

26

27

28

1

2

3

4   The equities cry out for an injunction.  Emeco has submitted substantial, unrebutted

5   evidence of the massive harm it already has suffered as a result of RH's flooding of the market

6   with millions of catalogs and website displays featuring its infringing products, and the enormous

7   harm it would plainly suffer if RH resumes selling its chairs.  Emeco's need for corrective notice

8   is manifest, and RH admittedly will suffer no burden from an injunction precluding sales which it

9   already has purportedly ceased.  Under established Ninth Circuit law, Emeco's entitlement to an

10  injunction is clear.  *See Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1314 (9th Cir. 1997).

11  **II.    EMECO HAS ESTABLISHED A LIKELIHOOD OF SUCCESS ON THE MERITS**

12  **A.    Emeco's Trade Dress and Trademarks Are Enforceable**

13  RH does not dispute that Emeco's marks are subject to incontestable registrations, have a

14  "strong presumption of validity," and that it must prove genericness and functionality by a

15  "preponderance of the evidence."  *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108,

16  1113-14 (9th Cir. 2010).  Despite RH's attempt to borrow a "substantial questions" standard from

17  the *patent* context (Opp. at 6), the law is clear that a party must establish "*great doubt* as to the

18  validity of the trademark" to avoid an injunction.  *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4

19  F.3d 819, 822 (9th Cir. 1993) (emphasis added); *Dr. Rath Health Programs USA B.V. v. Juvenon,

20  Inc.*, 2006 WL 2038037, at *1 (N.D. Cal. July 19, 2006).  RH has not met that burden here.

21  **1.    RH Has Not Proven "Genericness"**

22  **a.    Emeco's Trade Dress Is Not Generic**

23  RH has not come close to establishing that Emeco's trade dress in the design of the Navy

24  Chair® is "generic," *i.e.*, that the "design" is "regarded by the public as the basic form of a

25  particular item"— which courts consider a "severe condemnation."  *Abercrombie & Fitch Stores,

26  Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 639 (6th Cir. 2002).

27  Beyond the distorted interpretation of an Emeco employee's statement, *infra* p. 5, RH's

28  evidence consists entirely of scattered instances of third parties selling chairs similar to the Navy

Chair®.  These cherry-picked examples from the Internet are not, as RH misleadingly suggests

(Opp. at 10), competitors innocently using a "basic form" of a chair, but rather are imitations and

likely infringements of the Navy Chair® itself.  Indeed, one of the very chairs RH highlights (The

Lexmod Sailor Chair, Dkt. 27, Ex. 14), is described on other sites as an "emeco navy chair,"

Blavin Suppl. Decl. ("Suppl. Decl."), Ex. 1.  This same design, cited throughout RH's papers

(Dkt. 27, Exs. 9, 14-15), is marketed elsewhere as "Replica Emeco" and "Emeco Repro," Supp.

Decl., Exs. 2-3.  If anything, the "industry" use RH points to is composed of other knockoffs that

frequently *refer back to Emeco*.  And as RH's "lineup" shows (Opp. at 11), RH's chair by far

most closely resembles the Emeco original (chairs #2 and #5 in lineup order).[1]

The existence of other third-party infringers does not give RH a license to engage in

illegal conduct.  Indeed, evidence of "other potential infringers" is "irrelevant under the law of

this circuit."  *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1181 (9th Cir. 1988).[2]  As

the court held in *adidas* in rejecting the defendant's similar argument that adidas's sneaker trade

dress was generic given that "numerous third parties" sold similar "two- and four-stripe designs":

> [T]he Ninth Circuit has held that the mere existence of third-party infringers is
> irrelevant. . . . '[Defendant's] argument is no more persuasive than that of a drunken
> driver who pleads to be let off because there are 'lots of other drunk drivers on the
> road—why pick on me?' This is not a 'defense,' nor should it be. . . .

529 F. Supp. 2d at 1258, 1260 (quoting McCarthy § 17:17).  At best, this "'genericness' defense"

premised on similar third-party use "*relates solely to the strength*" of the marks under the

---

[1] The other design RH highlights, a chair with 4 wavy lines without a curved bar on the back (Dkt. 27, Exs. 8, 12-13), is readily distinguishable from the Navy Chair® (Mot. at 15, 17 n.6). RH also points to a handful of military contractors who historically have made similar (though not identical) chairs solely for the Navy, *see* Dkt. 27, Exs. 4-7.  As RH's own documents state, "most" of these kinds of chairs were "commissioned from Emeco."  *Id.*, Ex. 5.  RH offers no evidence that such companies have ever sold such chairs to the *public*, as Emeco does and which is the basis of its trade dress rights, or even what their sales were to the Navy.  Putting aside the question of whether these products also may infringe Emeco's rights, RH cannot rely on negligible third-party sales to the Navy from half a century ago (or today) to establish use within the *entire consumer* market such that the *public* views the chair as generic.  As the Ninth Circuit has held, where a "small number of people use a particular" mark in a limited market, the mark does "not become generic" and a party may "register it" for "nationwide" use, as Emeco has done here.  *Anti-Monopoly, Inc. v. Gen. Mills Fun Grp., Inc*., 684 F.2d 1316, 1321 (9th Cir. 1982); *see also Magic Wand, Inc. v. RDB, Inc*., 940 F.2d 638, 641 (Fed. Cir. 1991) (use by "small part of the relevant purchasing public has limited probative value" and is "not enough to show generic use").

[2] *See also STX, Inc. v. Bauer USA, Inc*., 1997 WL 337578, at *13 (N.D. Cal. June 5, 1997) ("[E]vidence of other potential infringers is 'irrelevant' to a suit against a particular infringer.").

1   likelihood of confusion analysis—irrelevant here because of the *identical* copying at issue (*infra*

2   p. 10)—but does not establish invalidity.  *Id.* at 1260 (emphasis added); *see Levi Strauss & Co. v.*

3   *Abercrombie & Fitch Trading Co*., 2008 WL 4614660, at *10 (N.D. Cal. Oct. 16, 2008) (rejecting

4   "generic" defense; "other jeans manufacturers using designs purportedly similar" only "impacted

5   [mark's] strength"); *Quality Inns Int'l, Inc. v. McDonald's Corp*., 695 F. Supp. 198, 214 (D. Md.

6   1988) ("evidence of third-party uses" is "probative only" of marks' "strength" and "will not

7   preclude the[ir] enforcement"); *Schutz Cont., Inc. v. Mauser Corp.*, 2012 WL 1073153, at *19

8   (N.D. Ga. Mar. 28, 2012) ("other possible infringers . . . falls woefully short" of "generic use").

9        Indeed, the "owner of a mark is not required to constantly monitor every nook and cranny

10  of the entire nation" for "possible infringer[s]."  *Engineered Mech. Servs., Inc. v. Applied Mech.*

11  *Tech., Inc.*, 584 F. Supp. 1149, 1160 (M.D. La. 1984).  Here, Emeco has submitted extensive

12  unrebutted evidence that it vigorously enforces its rights. Dkt. 10-1 ¶¶ 21-23 & Ex. C.  It has

13  successfully taken action against some of the very designs RH repeatedly highlights (Dkt. 27,

14  Exs. 9, 14-15), including in a high-profile dispute with Target in 2005 covered by *The New York*

15  *Times* and *Washington Post*.  *Id.* ¶ 22; Suppl. Decl., Exs. 4-6; *Hermes Int'l v. Lederer de Paris*

16  *Fifth Ave., Inc.*, 219 F.3d 104, 110 (2d Cir. 2000) ("Far from establishing that Hermès' designs

17  have become generic," it "vigorously pursued manufacturers of knockoff goods").[3]

18        Moreover, RH's showing is fundamentally inadequate because it has not put forth *any*

19  evidence that the trade dress is viewed as generic by "*the consuming public*," rendering the court

20  "without a sufficient evidentiary basis" to so hold.  *KP Permanent Make-Up, Inc. v. Lasting*

21  *Impression I, Inc*., 408 F.3d 596, 606 (9th Cir. 2005) (emphasis added); *Filipino Yellow Pages,*

22  *Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1148 (9th Cir. 1999) ("'ultimate test' for

23  genericness" is how mark "understood by the consuming public").  As the Lanham Act states:

24  "The primary significance of the registered mark *to the relevant public . . .  shall be the test* for

25  determining whether" a "mark" is "generic."  15 U.S.C. § 1064(3) (emphasis added).  Thus,

26  "[c]onsumer surveys have become almost de rigeur in litigation over genericness" and a litigant

---

[3] RH has not come close to establishing *abandonment*, which requires, by "clear and convincing" evidence, that "'all rights of protection have been lost," *Levi Strauss*, 2008 WL 4614660, at *10. Indeed, "courts are reluctant to find an abandonment."  3 McCarthy § 17:12.

1   "who does not introduce a survey to support a generic challenge may be viewed as less than

2   serious." 2 McCarthy § 12:14; *Hermes*, 219 F.3d at 110 (genericness "require[s]" a "'highly

3   factual analysis of consumer perception'").[4]   Courts repeatedly have rejected genericness claims

4   where, as here, the defendant provides no evidence as to whether the *public perceives* the marks

5   as generic.  *See KP*, 408 F.3d at 606; *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d

6   1, 28 (1st Cir. 2008) (rejecting claim that logo generic where "[o]ther than industry use, there is

7   no evidence in the record establishing how the consumer population perceives the image").[5]

8           RH's other arguments are equally meritless.  It entirely misconstrues a statement in a

9   video from an Emeco employee (Magnus Breitling) that the chair was based on a "generic wood

10  chair."  Opp. at 11.  At the outset, the statement is irrelevant because "the word 'generic' has a

11  specific legal meaning . . . in trademark law [that] is not the proper subject matter for lay

12  testimony."  *Firehouse Grp. v. Scurmont*, 2011 WL 3555704, at *7 n.6 (D.S.C. Aug. 11, 2011).

13  Indeed, the Ninth Circuit has rejected similar attempts to contort a party's statements to establish

14  genericness.  *KP*, 408 F.3d at 605 (rejecting claim that founder's statement "used [mark] as a

15  generic term").  And as Mr. Breitling testifies, this statement was simply meant to convey that the

16  design took *inspiration* from existing wooden farm-house style chairs.  Breitling Decl. ¶¶ 2-8.[6]

---

17  [4] RH's survey did not ask respondents whether they viewed the Navy Chair® as the "basic" form
18  of a chair.  And neither RH nor Mr. Poret offer its results on genericness; rather, Mr. Poret
    describes its "purpose" as to determine which consumers "associate" the chair with Emeco, Dkt.
19  26-17, Ex. 1 at 3, which is relevant, at best, to *secondary meaning* (*infra* pp. 10-11).  *See Genesee
    Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 143 n.4 (2d Cir. 1997) (survey that asked
20  whether "consumers associate 'Honey Brown' with beer from one source" relevant to "secondary
    meaning" but not genericness where failed to ask whether consumers viewed it as basic "category
21  of beer," an "important" omission "for determining whether 'Honey Brown' is generic").

22  [5] *See also Glover v. Ampak, Inc.*, 74 F.3d 57, 60 (4th Cir. 1996) (genericness not established
    where evidence showed that "many knives" used plaintiff's marks and trade dress but no
23  "consumer surveys" or other evidence of "public's understanding"); *Haritatos v. Hasbro, Inc.*,
    2007 WL 3124626, at *5 (N.D.N.Y Oct. 23, 2007) ("extensive third-party use" did not establish
24  "generic" where "Defendants have not produced any consumer surveys or other such evidence
    showing that the purchasing public perceives the term 'candyland' as a generic term").

25  [6] Moreover, even if historically there were similar designs, "[o]riginality is not an element of
    trade dress protection."  *Berg v. Symons*, 393 F. Supp. 2d 525, 551 n.15 (S.D. Tex. 2005); *see
26  also Conf. Archives, Inc. v. Sound Images, Inc.*, 2010 WL 1626072, at *10 (W.D. Pa. Mar. 31,
    2010) ("[T]rade dress protection appl[ies] . . . even if unoriginal"); *In re Trade-Mark Cases*, 100
27  U.S. 82, 94 (1879) (trademark "generally is, the adoption of something already in existence'").
    The critical question for genericness is whether the consuming public regards the mark as generic
28  *today*, the "crucial date," *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419
    F.3d 925, 928 (9th Cir. 2005), which RH's examples of primarily infringing use do not establish.

PL'S REPLY ISO PRE. INJ. MOT.;
CASE NO. CV 12-05072 MMC

Finally, RH's conclusory claim that the Navy Chair® trade dress is "generic" because it is "merely the basic form of a type of a chair" (Opp. at 10) is meritless.  Emeco's trade dress seeks to protect a specific, concrete expression of a particular design (demonstrated by the registration drawings, numerous images, and a detailed list of claimed elements).  As courts have held, a chair

> is neither generic nor does it seek to protect a basic form of an article [where] [i]t does not seek trade dress protection in all chairs, or all office chairs, or even all mesh-backed office chairs.  Plaintiff seeks trade dress protection in the specific, concrete expression of the particular chair design manifested by [the identified] configurations.

*Blumenthal Distrib., Inc. v. Exec. Chair, Inc*, 2010 WL 5980151, at *8 (E.D.N.Y. Nov. 9, 2010).[7]  And if the chair's design was nothing more than the "basic" form of a chair, it would not be celebrated today as an icon of modern design that is featured in museums around the world and which has won numerous design awards (none of which RH disputes).  *See* Mot. at 3-4; *Fiji Water Co. v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1176 (C.D. Cal. 2010) (that plaintiff "won international awards" for "design innovation" "is strong evidence" that its trade dress is "unique or unusual in the field and not simply a variation on existing . . . designs").

**b.      Emeco's Trademarks Are Not Generic**

As with its trade dress arguments, RH's failure to provide *any* survey or other evidence establishing whether the *public* views "The Navy Chair®" trademark as generic—referring to a general "type of product," *Filipino*, 198 F.3d at 1147—renders its submission inadequate.  Third-party use alone is insufficient to prove genericness, particularly where such use is infringing.

Moreover, "The Navy Chair®" mark is at the very least descriptive, and because the mark is incontestable, RH cannot challenge its validity.  As RH agrees, the USPTO determined that the mark was "descriptive," not generic, because it describes a "particular style of chair commonly used by the Navy," not a general type of product, and awarded registration due to evidence it had "acquired secondary meaning."  Opp. at 9; *see also George & Co. v. Imagination Entm't Ltd.*, 575 F.3d 383, 395 (4th Cir. 2009) (court "obligated to defer" to USPTO determination that mark is "descriptive").  RH itself describes its use of "naval" as a "descriptive word for something designed and used by the U.S. Navy."  Opp. at 19.  RH's challenge is thus "foreclosed by

---

[7] By contrast, in *Walker & Zanger, Inc. v. Paragon Ind., Inc*., 465 F. Supp. 2d 956, 964 (N.D. Cal. 2006) (Opp. at 10), the plaintiff sought to protect "abstract images or marketing themes."

hornbook trademark law. . . '[It] cannot assert that an incontestable mark is invalid because it is descriptive. . . ." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1135 (9th Cir. 2006).[8]

## 2.    RH Has Not Established Functionality

RH has not established that Emeco's trade dress in the design of the Navy Chair® is functional, *i.e.*, that it is "*essential* to the use or purpose" of the chair. *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n.10 (1982) (emphasis added). RH's entire defense is based on nothing more than conclusory attorney argument, and on that basis alone should be rejected. *See, e.g., Tools USA & Equip. Co. v. Champ Frame Straightening Equip. Inc.*, 87 F.3d 654, 658 (4th Cir. 1996) (rejecting functionality defense where defendant "cites no evidence, and offers no argument beyond conclusory statements"). And at any rate, RH's specific claims are meritless.

RH points to statements that the Navy Chair® is "utilitarian" and "suitable for use on warships and submarines" (Opp. at 12) but overlooks the fact that these advantages stem solely from Emeco's *manufacturing process*, and that the inquiry must "not focus on the usefulness of the article overall," but rather the "exact feature or combination of features that is claimed as a protectable trade dress or mark." *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1008 (9th Cir. 1998); Mot. at 14 & 16 n.4. And RH entirely ignores the substantial advertising and marketing evidence touting the chair's aesthetic beauty, independent of any utilitarian advantages, which is an independent factor supporting nonfunctionality. Mot. at 15-16.

Further, RH's focus on individual design elements disregards that the design "must be examined as a whole, not by its individual constituent parts." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001); Mot. at 13-14. Because RH "has presented *no evidence that the combination* of qualities that constitutes plaintiff's trade dress is *essential* to the effective functioning" of the chair, it "has not sustained" its "burden" even if it could "demonstrate[] that each aspect of plaintiff's trade dress serves a functional purpose." *P3 Int'l v. Weitech Inc.*, 1999 WL 1020249, at *4 (S.D.N.Y. Oct. 6, 1999) (emphasis added). Indeed, RH has not even identified any specific elements that are "*essential* to the use or purpose" of the

---

[8] Because the "111 Navy Chair®," which refers to the 111 Coke bottles that are used to construct each chair, requires a "mental leap," it is suggestive and thus inherently distinctive. *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1150 (9th Cir. 2011).

1  chair.  456 U.S. at 850 n.10 (emphasis added).  RH states, *e.g.*, that the three bars and lower curve

2  on the seat back "offer a place to grip the chair" and the rounded and one-piece design "offer[s]

3  back support" and "avoids sharp corners."  Opp. at 12.  But a "feature that merely accommodates

4  a useful function," such as a place to grip the chair or avoid a sharp corner, which is all RH has

5  shown, is "not enough."  *LeSportsac, Inc. v. K–Mart Corp.*, 754 F.2d 71, 76 (2d Cir. 1985).

6  These elements are "not essential to the functioning of the chair."  *Gasser Chair Co. v. Infanti*

7  *Chair Mfg. Corp.*, 943 F. Supp. 201, 214 (E.D.N.Y. 1996); *Imagineering, Inc. v. Van Klassens,*

8  *Inc.*, 53 F.3d 1260, 1262 (Fed. Cir. 1995) (trade dress protection for chair with "wide slats,

9  scooped seat boards and arms, rounded edges, notched and curved legs, and angled backrests").[9]

10     RH argues that because some alternative aluminum chair designs may be similar, this

11  supports functionality.  But even if alternative designs "look similar, but not identical," "[t]his

12  does not" favor a "finding of functionality" because "none of them offer exactly the same

13  features" as the plaintiff's product.  *Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677,

14  686 (9th Cir. 2012).  Further, there are a plethora of alternative aluminum chairs that look nothing

15  like the Navy Chair® (Suppl. Decl., Exs. 7-10):



16
17
18
19

20     Finally, RH argues that it is able to build its chair cheaply, but the question is whether the

21  "design *results from* a comparatively simple or inexpensive method of manufacture."  *Disc Golf*,

22  158 F.3d at 1006 (emphasis added).  The evidence shows that the chair's design is *not* dictated by

23  cost, as Emeco's manufacturing process results in the same design at a higher cost.  Mot. at 16.

24     **B.     Emeco Has Established a Likelihood of Confusion**

25     RH's lengthy discussion of the likelihood of consumer confusion disregards the simple

26  _____

[9] *Heptagon Creations, Ltd. v. Core Grp. Mktg. LLC*, 2011 WL 6600267 (S.D.N.Y. Dec. 22, 2011)
(Opp. at 13), is inapposite.  There, the court stated that the chair's trade dress was functional
27  because it served "aesthetic" purposes, but in this Circuit, features with "aesthetic purposes"
*support* non-functionality.  *Volkswagen AG v. Verdier Microbus & Camper, Inc.*, 2009 WL
28  928130, at *5 (N.D. Cal. Apr. 3, 2009); Mot. at 13-14.

1    reality that it is selling identical counterfeit goods, and under settled law, confusion is presumed

2    as a matter of law.  *See Brookfield*, 174 F.3d at 1056; *Power Balance LLC v. Power Force LLC*,

3    2010 WL 5174957, at *4 (C.D. Cal. Dec. 14, 2010) (given "identicality" of products, "Court

4    presumes the likelihood of confusion" for "trade dress claims"); Mot. at 19.

5            RH half-heartedly argues that while its "chairs look similar to Plaintiff's chairs" (Opp. at

6    15)—indeed, they are identical—and while it is using the near-identical "Naval Chair" name, it is

7    not selling "counterfeit" items because it is "not us[ing] the Emeco name," and it marketed the

8    chairs "in its own catalog and on its own website." Opp. at 15.  That is all irrelevant.  The test for

9    a counterfeit good is simply whether it is "identical with, or substantially indistinguishable from,

10   a registered mark," 15 U.S.C. § 1127, which is plainly the case here.  The marks at issue are the

11   design of the Navy Chair® and "The Navy Chair®" and "111 Navy Chair®" marks, *not*

12   "Emeco."  Indeed, RH could have branded the chairs something else entirely, but they still would

13   have been counterfeits of the chair's design.  A party "cannot avoid liability simply by affixing a

14   single tag that says something other" than the brand name "to counterfeit merchandise." *Coach,*

15   *Inc. v. Abner's Fashion*, 2009 WL 4810179, at *3 (C.D. Cal. Dec. 7, 2009).  Further, that RH sold

16   the chairs in its own catalog, stores, and website is immaterial; that fake Rolex watches are sold

17   on street corners rather than in Rolex stores does not make them any less counterfeit.

18           And in fact, RH's products do "not have to be an exact replica of [the] registered" Navy

19   Chair® marks "to be deemed a counterfeit." *United States v. Lam*, 677 F.3d 190, 199 (4th Cir.

20   2012).  "Such an interpretation would allow counterfeiters to escape liability by modifying the

21   registered trademarks of their honest competitors in trivial ways.'" *United States v. Guerra*, 293

22   F.3d 1279, 1288 (11th Cir. 2002).  The likelihood of confusion is presumed as a matter of law.

23   That begins and ends the inquiry.  And in any event, RH's arguments as to the specific *Sleekcraft*

24   factors are deeply flawed and in no way rebut the presumption.

25                    **1.      The Navy Chair® Marks Are Strong**

26           At the outset, even if Emeco's marks were weak, which they are not, this is irrelevant

27   because where the products are "nearly identical," the "strength of the mark is of diminished

28   importance." *Brookfield*, 174 F.3d at 1058-59; 2 McCarthy § 11:76 (strength of mark "of little

1    importance where the conflicting mark is identical").  In any event, because the marks are

2    incontestable, this provides "conclusive proof" of secondary meaning, *Entrepreneur Media, Inc.*

3    *v. Smith*, 279 F.3d 1135, 1142 n.3 (9th Cir. 2002), and a "mark is the strongest kind of mark"

4    where "it is a registered trademark that became incontestable." *Neighborhood Assistance Corp.*

5    *of Am. v. First One Lending Corp.*, 2012 WL 1698368, at \*17 (C.D. Cal. May 15, 2012).[10]

6    Further, Emeco has submitted extensive evidence establishing secondary meaning, including

7    RH's indisputable copying that "*strongly* supports an inference of secondary meaning," *Vision*

8    *Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989), Emeco's expenditure of

9    substantial sums promoting the chair, numerous articles and television shows featuring the chair,

10   its inclusion in modern art museums, and its winning of several design awards.  Mot. at 17-18.

11         Ignoring all of this, RH improperly relies upon a survey by Hal Poret to purportedly

12   demonstrate that Emeco's marks lack secondary meaning.  *See* Opp. at 15-16.  Because the marks

13   "are incontestable as a matter of law," this "survey" cannot be used to establish that they "lack[]

14   secondary meaning." *Lumber Liquidators, Inc. v. Stone Mountain Carpet Mills, Inc.*, 2009 WL

15   2013599, at \*9 (E.D. Va. July 10, 2009).  But even if the survey were relevant, its results are

16   meaningless.  Mr. Poret began with two questions: "Do you associate the overall look of this

17   chair with any particular company or brand of chair or do you not?," and if yes to that question,

18   "With what company or brand of chair do you associate the overall look of this chair?"  Dkt. 26-

19   17, Ex. 1 at 5.  RH argues that because a small percentage of respondents to the second question

20   specifically identified Emeco as the source, there is no secondary meaning (Opp. at 16).

21         But that is not the proper inquiry.  A showing of secondary meaning only requires "that

22   the public associate[]" the product "with a single source, even if that source is anonymous."

23   *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 887 (9th Cir. 1996); *Centaur*

24   *Commc'ns, Ltd. v. A/S/M Com., Inc.*, 830 F.2d 1217, 1221 (2d Cir. 1987) (public need "not know

25   the name of the producer").  Indeed, in prior reports, Mr. Poret himself has criticized surveys that

26   asked the respondents to identify a particular producer, stating that "it ***would not be appropriate***

27

28   [10] *See also E & J Gallo v. Proximo Spirits, Inc.*, 2012 WL 273076, at \*15 (E.D. Cal. Jan. 30,
     2012) ("based on the incontestable status," trade dress "is a strong mark").

PL'S REPLY ISO PRE. INJ. MOT.;
CASE NO.  CV 12-05072 MMC

1   to assume respondents know the name of the company that makes [the plaintiff's product] and

2   would name [that company] if they believed they were looking at [the product]."  Suppl. Decl.,

3   Ex. 11 at 9 n.9 (emphasis added).  Mr. Poret's first question went to the relevant inquiry of

4   whether the respondents identified the Navy Chair® design with a single though anonymous

5   source, and in response to that question, **94 respondents** (31% of total respondents), answered

6   "yes."  Dkt. 26-21, Cell AZ (Q210).  "Various courts have held that such a percentage of

7   recognition (approximately 30% or more) is probative of secondary meaning."  *Shuffle Master*

8   *Inc. v. Awada*, 2006 WL 2547091, at 3 n.1 (D. Nev. Aug. 31, 2006) (collecting cases).

9                           **2.      Actual Confusion Exists**

10          Where, as here, "counterfeit furniture is identical to, or substantially indistinguishable

11  from" a plaintiff's, "actual confusion" is "presumed."  *Herman Miller Inc. v. Alphaville Design*

12  *Inc.*, 2009 WL 3429739, at *7 (N.D. Cal. Oct. 22, 2009).  As shown in Emeco's Motion,

13  consumers already have demonstrated confusion between the products.  Mot. at 9-10.

14          RH attempts to sidestep this reality through the Poret Survey.  But as noted, the survey, at

15  best, goes to "a finding of secondary meaning," as RH concedes, Opp. at 15, not likelihood of

16  confusion.  As the Federal Circuit held in rejecting this very type of survey for purposes of

17  establishing confusion in a trade dress action regarding the design of two hand lotion containers,

18          [t]hat survey was a 'secondary meaning' survey, designed to test whether the overall
            shape and coloring of the Conopco container had acquired meaning as a source-
19          indicator. *The survey did not purport to address the question of whether consumers
            could successfully distinguish that container from the Venture container, and thus has
20          no relevance to the actual confusion or likelihood of confusion issues*.

21  *Conopco, Inc. v. May Dep. Stores Co.*, 46 F.3d 1556, 1564 n.9 (Fed. Cir. 1994) (emphasis added).

22          In fact, Mr. Poret himself has criticized surveys that fail to have respondents compare the

23  plaintiff's and defendant's products, as would be the case under actual marketplace conditions:

24          Respondents did not have the opportunity to see both [the] products and to consider
            their similarities (or differences) as they would if encountering both in the marketplace.
25          Accordingly, Klein's [competing expert] survey failed to account for confusion under
            such actual marketplace circumstances.  My survey, on the other hand, tested a scenario
26          in which respondents encounter both products, and found that confusion was likely to
            occur under the marketplace conditions that Klein declined to simulate.

27  Suppl. Decl., Ex. 11 at 8.[11]  Under actual marketplace conditions here, consumers would compare

28  _____
    [11] *See also WE Media Inc. v. Gen. Elec. Co.*, 218 F. Supp. 2d 463, 474 (S.D.N.Y. 2002)

the chairs directly, *e.g.*, on the Internet.  Because it is obvious that a comparison of the products here would have yielded substantial evidence of confusion, Mr. Poret chose not to do in this case what he has properly done in prior surveys and has expressly criticized others for failing to do.

But moreover, the Poret Survey, if anything, demonstrates that RH already has *caused substantial confusion* by flooding the market with millions of catalogs featuring its products and through its widely-visited website.  In response to the second question of the survey—"With what company or brand of chair do you associate the overall look of this chair?"—38 respondents identified RH, more than any other source, and several did so on the basis of what they had *already* seen in its catalogs and on its website.  Dkt. 26-21, Cell BA (Q210); Cell BB (Q220) (*e.g.,* "have seen this in a catalog"; "seen it or something very similar on their website"; "Have seen in their catalogue"; "seen it in email"; "have seen it in their catalog").  *See, e.g., Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1238 (10th Cir. 2006) (actionable confusion where consumers believe "defendant is the source of the plaintiff's products or services").

### 3.   Remaining Key *Sleekcraft* Factors Favor Emeco

The remaining *Sleekcraft* factors all strongly militate in favor of Emeco:

- **Trade Channels**:  Contrary to RH's argument, this factor does "not limit channels of trade to identical stores . . . . Rather a channel of trade includes the *same type* of distribution channel," which exists here.  *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 877 (Fed. Cir. 1992); *see Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115 (C.D. Cal. 2009).  Further, both parties sell products through the Internet, an overlapping channel.  *Brookfield*, 174 F.3d at 1057.

- **Due Care:**  Where, as here, "the products are identical and the marks are identical, the sophistication of buyers cannot be relied on to prevent confusion."  *Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 492 (2d Cir. 1988).  Indeed, "confusion may often be likely even in the case of expensive goods sold to discerning customers."  *Brookfield*, 174 F.3d at 1060.  Moreover, RH ignores "post-purchase confusion," *i.e.*, someone other than the purchaser who "sees the item after it has been purchased."  *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1077-78 (9th Cir. 2006).  The products' price points will do nothing to preclude such confusion.[12]

- **Intent:**  Emeco is not relying on "*ad hominem*" attacks to establish intent (Opp. at 20),

_____

("[g]ermane survey evidence should make some effort to compare the impressions the marks have on potential customers"); *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 574 & n.120 (S.D.N.Y. 2007) (excluding survey for failing to employ a "sequential presentation or 'line-up'" of products "which better approximates marketplace conditions").

[12] Further, RH ignores that the 111 Navy Chair®, which is sold in black and white versions identical to the Naval Chair products, sells for $260 (Dkt. 10-6, Ex. 1), and there is thus less than a $100 price differential between the 111 Navy Chair® and the Naval Chair products.

but settled law. Where "counterfeit furniture is identical to, or substantially indistinguishable from" the plaintiff's, that "is sufficient to show that [the defendant] intentionally copied plaintiff's marks." *Herman Miller*, 2009 WL 3429739, at *7. Further, RH's willful intent may be inferred from the fact it has been sued in similar actions in the past and has made a practice of copying others' designs, *none of which RH denies*. Mot. at 10, 21. ████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

- **Marks' Similarity:** RH does not argue that the designs of the products are dissimilar because, of course, they are identical. Further, the "'similarity of the marks' test—especially when the comparison is between marks on identical product types . . .—does not require an identity of marks." *Malletier v. Burlington Coat Factory Warehouse*, 426 F.3d 532, 538 n.3 (2d Cir. 2005). And as RH concedes, it is called the "Naval Chair *collection*." Opp. at 18 (emphasis added). By changing Navy Chair® to Naval Chair, RH has merely turned a noun ("Navy") of a two-word mark into its adjectival form ("Naval"). The term "Introducing" is a small-print, stock promotional clause. And the inconsistent use of the phrases "1940s" and "1940s Aluminum" as a preface is, at best, a trivial modification to the mark. *See Guerra*, 293 F.3d at 1288. *Groupion, LLC v. Groupon, Inc.*, 859 F. Supp. 2d 1067, 1076 (N.D. Cal. 2012) (Opp. at 19) is inapposite. Unlike here, the products there were not closely related.[13]

## III. EMECO HAS DEMONSTRATED IRREPARABLE HARM

RH's irreparable harm arguments ignore significant record evidence and settled law.

First, Emeco has provided substantial evidence that RH's conduct has caused and *threatens* to cause lost sales, price erosion, loss market share, and damage to goodwill (Opp. at 22). *Diamontiney v. Borg*, 918 F.2d 793, 795 (9th Cir. 1990) (injury need not be "inflicted" as "strong threat of irreparable injury . . . adequate"). As the unrebutted record demonstrates:

- Emeco spends substantial sums advertising the Navy Chair®, attributing its source to Emeco. Dkt. 10-1 ¶ 8. *See SunEarth, Inc. v. Sun Earth Solar Power Co.*, 846 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012) (irreparable harm where plaintiffs invested significantly in "building up a strong reputation over the course of several decades").

---

[13] RH raises a conclusory fair use defense solely as to its use of Emeco's *trademarks*, not *trade dress*, rendering it largely irrelevant to the proposed injunction. In any event, the defense fails. First, courts repeatedly reject fair use defenses when the defendant uses the mark as part of its product name, which is clearly the case here. *See Lewis Mgmt. Co. v. Corel Corp.*, 1995 WL 724835, at *6 n.6 (S.D. Cal. June 28, 1995) ("use as the name of a product, as opposed to use to describe the product, is not descriptive use entitled to the fair use exemption"); *Byrnes & Kiefer Co. v. Flavoripe Co.*, 1986 WL 15550, at *6 (W.D. Pa. Aug. 20, 1986) (same). RH's contention that it is using "Naval Chair" as part of a longer phrase clearly distorts the context in which the terms appear. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1040 (9th Cir. 2010) (non-fair use when mark used "as a 'symbol to attract public attention'"). Moreover, as discussed, RH plainly has not used the mark "fairly and in good faith." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002).

- The Naval Chair collection replicates the design and name of the Navy Chair®, causing a strong likelihood of consumer confusion. Dkt. 10-1 ¶ 28. *See Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 334 (S.D.N.Y. 2011) ("particularly strong likelihood of confusion should weigh in favor of finding irreparable injury").

- Emeco has no control over the quality of products made by RH's Chinese source. *See Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009) (interference with "holder's legitimate steps to control quality" risks "injury to the reputation of" mark).

- The Naval Chair's $129 price point is more than $300 less than an authentic Navy Chair®, cheapening the brand and devaluing the genuine Navy Chair® to millions of Emeco's prospective and existing customers who saw advertisements in RH's catalogs and on its website or who see the Naval Chair in public spaces. Dkt. 10-1 ¶¶ 29-30; Dkt. 10-6 ¶¶ 2-3, Exs. 1-2; *Uni. Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 2005 WL 2427898, at *3 (M.D.N.C. 2005) (where infringer "can charge significantly lower prices for its furniture," this damages reputation and goodwill).

Given this abundant evidence, RH's reliance on *Leatherman Tool Group, Inc. v. Coast Cutlery Co.*, 823 F. Supp. 2d 1150, 1158-59 (D. Or. 2011), in which the court rejected statements by an executive's conclusory "vouch[ing] for [plaintiff's] harm" is clearly misplaced.[14]

While RH's lawyers casually tell the Court that it will cease sales pending this litigation, Emeco remains entitled to an injunction under controlling Ninth Circuit precedent holding that the voluntary cessation of infringing activities is not a ground for denial of a preliminary injunction. *See, e.g.*, *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1314 (9th Cir. 1997); *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135-36 (9th Cir. 1986). The reason is simple: "[i]f the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [the plaintiff] substantial protection." *Polo Fashions*, 793 F.2d at 1135-36. And indeed, it "is entirely too easy for an adjudicated infringer to claim a reformation once the specter" of an "injunction looms near," which is of particular concern given RH's past infringing conduct and clear intent to infringe here. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1221 (C.D. Cal. 2007). Further, even if RH "has ceased production," it has not shown "that it would be unable to resume production in the future." *Rebel Debutante LLC v. Forsythe Cosmetic Grp., Ltd.,* 799 F. Supp. 2d 558, 568 (M.D.N.C. 2011). RH's measures to secure its inventory do not refute that it has full custody of the infringing products and at any time could

---

[14] Furthermore, *Leatherman* was not even a trademark case; it involved a noncomparative false advertising claim. By contrast, "damages occasioned by trademark infringement are by their very nature irreparable." *Int'l Kennel Club. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988).

return them to market.  Further, its assurances do not render "injunctive relief moot" given that it vigorously "continues to assert a right to engage in the complained-of conduct."  *Aztar Corp. v. NY Entm't, LLC*, 15 F. Supp. 2d 252, 256 n.4 (E.D.N.Y. 1998).[15]

And at any rate, Emeco requests not only an injunction on sales, but also corrective notice to the millions of catalog recipients and website visitors who viewed the infringing Naval Chair (Dkt. 10-43 at ¶ 4).[16]  Absent this relief, the irreparable injury to Emeco persists, as demonstrated by the several respondents to the Poret Survey who affiliated the Navy Chair® design with RH based on their viewing of its catalog and website.  *LGS Architects, Inc. v. Concordia Homes of Nev.*, 434 F.3d 1150, 1154 (9th Cir. 2006) (cessation of sales "would not moot" plaintiff's "request for a mandatory injunction"); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 2003 WL 21056809, at *5-7 (S.D.N.Y. May 8, 2003) (cessation does not moot injunction request where plaintiff sought notice to "each recipient" of catalog of infringing items).

## IV.    THE BALANCE OF HARDSHIPS TIPS SHARPLY IN EMECO'S FAVOR

Conceding that it would not suffer any hardship from an injunction on future sales, RH only takes issue with Emeco's request for corrective notice.  Its argument thus would only affect the nature and scope of the notice.  In any case, RH fails to cite *any* evidence demonstrating hardship, and its bald assertions of financial cost and loss of goodwill do not outweigh the unrebutted evidence of substantial hardship to Emeco caused by the confusion wrought by the millions of distributed catalogs and website displays featuring its infringing products.

## V.    THE PUBLIC INTEREST FAVORS AN INJUNCTION

As RH concedes, "courts often define the public interest at stake as the right of the public not to be deceived or confused."  Opp. at 25.  While RH makes a short plea for competition, this contention must fail given that confusion in the marketplace is highly likely.

## VI.    CONCLUSION

Emeco respectfully requests that the Court enter the proposed injunction.

---

[15] *Lorillard Tobaco Co. v. S&M Brands, Inc.*, 616 F. Supp. 2d 581, 586 (E.D. Va. 2009) (irreparable harm where party "still challenges" infringement); *Rebel,* 799 F. Supp. 2d at 568.

[16] *See Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 19 (7th Cir. 1992) (corrective notice "at the heart of the Lanham Act"); *Linotype Co. v. Varityper, Inc.*, 1989 WL 94338, at *3 (S.D.N.Y. Aug. 4, 1989) (notice in preliminary injunction "to counteract" "false impression" by ad).

1  DATED:   November 30, 2012                      MUNGER, TOLLES & OLSON LLP

2

3                                                  By:    _/s/ John W. Spiegel_____
                                                         JOHN W. SPIEGEL
4
                                                   Attorneys for Plaintiff Emeco Industries, Inc.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28